## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LAWRENCE SCHIFF SILK MILLS, INC., | : | Case No. 16-12396 (JKF) |
| | : | |
| Debtor | : | |

**EXPEDITED MOTION OF THE CHAPTER 11 TRUSTEE FOR ORDERS
PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 365,
FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, 6006, AND 9014,
AND LOCAL RULES OF BANKRUPTCY PROCEDURE 6004-1 AND 9014-3
(I)(A)  APPROVING BIDDING PROCEDURES RELATING TO SALE OF
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (B) APPROVING STALKING
HORSE ASSET PURCHASE AGREEMENT, (C) SCHEDULING A HEARING TO
CONSIDER THE SALE, (D) APPROVING THE FORM AND MANNER OF NOTICE
OF SALE BY COMPETITIVE SALE PROCESS, (E) ESTABLISHING PROCEDURES
FOR NOTICING AND DETERMINING CURE AMOUNTS, AND (F) GRANTING
RELATED RELIEF; AND (II)(A) AUTHORIZING THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTOR'S ASSETS OUTSIDE THE ORDINARY COURSE OF
BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (C) AUTHORIZING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

TO:   THE HONORABLE JEAN K. FITZSIMON,
      UNITED STATES BANKRUPTCY JUDGE:

William G. Schwab (the "Trustee"), Chapter 11 trustee for the estate of Lawrence Schiff

Silk Mills, Inc. (the "Debtor"), by and through his undersigned counsel, hereby moves this Court

pursuant to Sections 105(a), 363, and 365 of Title 11 of the United States Code (the "Bankruptcy

Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and Rules 6004-1 and 9014-3 of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the Eastern District of Pennsylvania

(the "Local Rules"), for entry of: (a) an order substantially in the form annexed hereto as

Exhibit "A" (the "Bidding Procedures Order"), (i) approving the bidding procedures (the

"Bidding Procedures") substantially in the form annexed hereto as Exhibit "B", including the proposed Bid Protections (defined below) set forth below in the description of the proposed sale (the "Sale") of certain of the Debtor's assets (as discussed in greater detail below, the "Acquired Assets") to the prospective purchaser (the "Prospective Purchaser"), (ii) approving the asset purchase agreement (the "Agreement") as a stalking horse asset purchase agreement (which Agreement shall be filed with the Court before the hearing to consider the same), (iii) scheduling a hearing (the "Sale Hearing") on the Sale and setting objection and bidding deadlines with respect to the Sale, (iv) approving the form and manner of notice of a competitive sale process for the Acquired Assets (the "Competitive Sale Process"), (v) establishing procedures to determine cure amounts and deadlines for objections to the assumption and assignment of certain contracts and leases by the Trustee (the "Assumed and Assigned Agreements"), and (vi) granting related relief; and (b) an order substantially in the form annexed hereto as Exhibit "C" (the "Sale Order"), (i) authorizing the Sale of the Acquired Assets outside the ordinary course of business, (ii) authorizing the Sale free and clear of liens, claims, encumbrances, and interests (iii) authorizing the assumption and assignment of the Assumed and Assigned Agreements, and (iv) granting related relief (the "Motion"). In support of the Motion, the Trustee respectfully states as follows:

## JURISDICTION

1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and the Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

PHIL1 5396318v.5

2.      The statutory bases for the relief requested herein are Sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, and 9014 and Local Rules 5070-1, 6004-1 and 9014-3.

## BACKGROUND

3.      Founded in 1918 and headquartered in Quakertown, Pennsylvania, the Debtor's primary business is the manufacturing of ribbons, bows, ties, straps, webbing and over five hundred (500) additional woven, fabricated materials for more than one thousand (1,000) customers worldwide.

4.      On February 8, 2012, the Debtor purchased the assets and assumed the liabilities of each of Lawrence Schiff Silk Mills, Inc. (n/k/a RJLS Enterprises, Inc.) ("RJLS"), LSSM Sales, Inc. and Richman Corporation (collectively, the "Predecessor Entities").

5.      Pursuant to that certain Master Purchase and Sale Agreement ("Master P&S Agreement") between Accord Financial, Inc. ("Accord"), as factor, and the Debtor, as seller, dated as of February 17, 2012, the Debtor sold and conveyed to Accord all of the Debtor's rights in certain accounts receivable arising in the ordinary course of the Debtor's business (the "Factored Accounts").

6.      In exchange for the Factored Accounts, and pursuant to the Master P&S Agreement, Accord agreed to make certain advances, up to a maximum amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00), to the Debtor under that certain Revolving Note and Financing Agreement by and between the Debtor, as borrower, and Accord, as lender, dated as of February 17, 2012 (together with the Master P&S Agreement, the "Accord Facility").

7.      As alleged security for the Debtor's obligations under the Accord Facility, the Debtor and Accord entered into that certain Security Agreement dated February 17, 2012,

3

pursuant to which the Debtor allegedly granted Accord security interests in and liens upon substantially all of the Debtor's assets.

8. Also on February 17, 2012, and as part of the consideration for the Predecessor Entities, the Debtor made that certain Secured Convertible Promissory Note dated February 17, 2012 in favor of RJLS in the principal amount of $1,800,000.00 (the "Subordinated Facility").

9. As alleged security for the Debtor's obligations under the Subordinated Facility, the Debtor and RJLS entered into that certain Security Agreement dated February 17, 2012, pursuant to which the Debtor allegedly granted RJLS security interests in and liens upon substantially all of the Debtor's assets, except for the Debtor's accounts receivable.

10. Prior to the filing of this Chapter 11 proceeding, the Debtor engaged in a process that would allow it to sell its business as a going concern. These marketing efforts resulted in various expressions of interest from potential buyers and, prior to the Petition Date (defined below), the Debtor had entered into non-disclosure agreements with four (4) parties. Three such parties performed some due diligence into the Debtor's business and assets. However, as of the Petition Date, no potential buyers had entered into a binding agreement to purchase the Debtor or its assets.

11. On April 5, 2016 (the "Petition Date"), Pyramid Realty Group, LP, Aero Energy and Grant Industries, Inc. (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor under Chapter 11 of the Bankruptcy Code.

12. On April 22, 2016 (the "Relief Date"), upon agreement between the Debtor and the Petitioning Creditors, the Court entered a Consent Order for Relief, which granted relief to the Debtor under Chapter 11 of the Bankruptcy Code as of the Relief Date.

PHIL1 5396318v.5

13.     Also on the Relief Date, the Debtor filed a Motion for an Order Pursuant to 11 U.S.C. § 1112(b) Appointing a Chapter 11 Trustee or, Alternatively, Converting Case to a Case Under Chapter 7 of the Bankruptcy Code (the "Motion for Trustee Appointment").

14.     On April 26, 2016, this Court entered an Order granting the Motion for Trustee Appointment.

15.     On April 29, 2016, 2016, the Office of the United States Trustee filed an Application for Order Approving Appointment of Trustee (the "Application to Appoint Trustee"), which requested that the Trustee be appointed as Chapter 11 Trustee in this matter.

16.     On May 2, 2016, this Court entered an Order approving the Application to Appoint Trustee and appointed the Trustee.

17.     Since the Petition Date, the Debtor has entertained expressions of interest from multiple parties interested in purchasing the Acquired Assets.   The Trustee has continued these discussions since his appointment and has, subject to the Court's approval, selected CSS Industries, Inc. ("CSS"), or an affiliate to be designated by CSS, in its sole discretion, as the Prospective Purchaser to acquire certain of the Debtor's assets under the following terms and conditions: CSS shall purchase the Debtor's designated assets for the price of $900,000.00 in cash, $800,000.00 of which will be paid at the Closing of the Sale, and the remainder of which will be paid promptly after the Trustee provides the Prospective Purchaser with access and information relating to certain of the Debtor's processes.   The terms of the proposed sale are described on the term sheet attached hereto as Exhibit "D" (the "Term Sheet").   The Trustee will file an executed copy of the Agreement with the Prospective Purchaser prior to the hearing date to consider the proposed Bidding Procedures.

18.     By this Motion, the Trustee seeks the entry of (a) the Bidding Procedures Order, (i) approving the Bidding Procedures, (ii) authorizing and approving the Agreement as a stalking horse asset purchase agreement for the Sale of the Acquired Assets, (iii) scheduling the Sale Hearing, (iv) approving the form and manner of notice of the Competitive Sale Process, (v) establishing procedures to determine cure amounts and deadlines for objections to the assumption and assignment of the Assumed and Assigned Agreements, and (vi) granting related relief; and (b) the Sale Order, (i) authorizing the Sale of the Acquired Assets outside the ordinary course of business, (ii) authorizing the Sale free and clear of liens, claims, encumbrances, and interests pursuant to the Agreement, (iii) authorizing the assumption and assignment of the Assumed and Assigned Agreements, and (iv) granting related relief.

### THE PROPOSED SALE

19.     Pursuant to the Agreement, the Trustee proposes to sell the Acquired Assets to the Prospective Purchaser (or such other bidder as may submit the highest or otherwise best offer for the Acquired Assets) free and clear of any and all liens, claims, encumbrances and other interests, with such liens, claims, encumbrances and other interests to attach to the proceeds of the Sale.

20.     The Agreement represents the culmination of an extensive negotiation process conducted by the Trustee and the Prospective Purchaser. After conducting the initial marketing and sale process for the Assets described above, the Trustee and the Prospective Purchaser have negotiated the relevant deal terms reflected herein and in the Term Sheet, subject to the proposed sale process and Court approval.

21.     The following paragraphs summarize key provisions of the Term Sheet, but are qualified in their entirety by reference to the actual Agreement.[1]

a.      The Prospective Purchaser shall purchase the Acquired Assets for the price of $900,000.00 in cash, $800,000.00 of which will be paid at the Closing of the Sale, and the remainder of which will be paid promptly after the Trustee provides the Prospective Purchaser with access and information relating to certain of the Debtor's processes;

b.      The deadline for overbids shall be June 28, 2016;

c.      The auction shall be conducted by telephone on June 29, 2016;

d.      Subject to the Court's availability, the Sale Hearing will be held on or before July 8, 2016;

e.      An order approving the Sale, in a form acceptable to the Prospective Purchaser, shall be entered on or before July 11, 2016; and

f.      Closing shall occur on or before July 31, 2016.

## PROPOSED BIDDING PROCEDURES

22.     The Trustee desires to receive the greatest value possible for the Acquired Assets. Although the Debtor, and now the Trustee, have undertaken extensive and thorough efforts to market the Acquired Assets, in order to ensure that the Trustee receives the highest possible price for the Acquired Assets, the Trustee believes it is imperative that it provide an additional opportunity for any interested purchasers to submit further offers for the Acquired Assets that may be higher or better than that set forth in the Agreement. Accordingly, the Trustee developed the Bidding Procedures (set forth in Exhibit "B" and summarized below) with the objective of promoting an expeditious process for further active bidding in the interest of obtaining the

---

[1] Capitalized terms used and not defined herein shall have the meanings ascribed to them in the Bidding Procedures, attached hereto as Exhibit "B," or the Term Sheet, attached hereto as Exhibit "D," as applicable.

7

highest and best offer for the Acquired Assets, while affording appropriate protections that have been requested by the Prospective Purchaser. The Bidding Procedures reflect the Trustee's objective of conducting the Sale in a controlled, fair, and open fashion that promotes interest in the Acquired Assets by financially-capable, motivated bidders who are likely to close a sale transaction.

### A.    **Bidding Procedures**

23.    The Bidding Procedures are typical for asset sales of this size and nature, include provisions for consultation with the appropriate interested parties, include a deposit requirement, and include a requirement that a bidder be a "Qualified Bidder", as defined in the Bidding Procedures.

24.    The following paragraphs summarize key provisions of the proposed Bidding Procedures, but are qualified in their entirety by reference to the actual Bidding Procedures.

### Participation Requirements

a.    In order to participate in the competitive bidding process, each person or entity intending to bid on the Acquired Assets (a "Potential Bidder") must first deliver (unless previously delivered) to the Trustee and the Trustee's counsel the following items (collectively, the "Participation Requirements"):

i.    Confidentiality Agreement. An executed confidentiality agreement in form and substance reasonably acceptable to the Trustee (each a "Confidentiality Agreement"); and

ii.    Proof of Financial Ability to Perform. The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of the Proposed Sale, Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure evidencing the Potential Bidder's ability to close the Sale, the sufficiency of which shall be determined by the Trustee in his reasonable discretion.

b.      Within one (1) business day after a Potential Bidder submits all of the documents necessary to satisfy the Participation Requirements, the Trustee, upon consultation with his advisors, shall determine whether the Potential Bidder has met the Participation Requirements and shall notify the Potential Bidder as to that determination.   Only upon satisfaction of all Participation Requirements will the Potential Bidder be deemed a "Qualified Bidder" eligible to participate in the bidding for the Acquired Assets.

### Access to Due Diligence Materials

a.      Upon satisfaction of the Participation Requirements and the designation of a Potential Bidder as a Qualified Bidder, the Trustee will afford each Qualified Bidder due diligence access to the Acquired Assets; provided, however, that the Trustee will have no obligation to provide due diligence access after the Bid Deadline (defined below).

### Bid Deadline

**a.      The deadline for Qualified Bidders to submit bids for the Acquired Assets shall be June 28, 2016, at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"). A bid received after the Bid Deadline shall not constitute a Qualified Bid (as defined below).**

b.      Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal for the Acquired Assets or any of the Excluded Assets (a "Bid") shall deliver written copies of its Bid so as to be received on or before the Bid Deadline by the Trustee and counsel to the Trustee as follows: (i) William G. Schwab and Associates, 811 Blakeslee Blvd. Drive East, Lehighton, PA 18325, Attn: William G. Schwab, Esquire, Fax: 610-377-5209, Email: schwab@uslawcenter.com; and (ii) Klehr Harrison Harvey Branzburg LLP, 1835 Market Street, Suite 1400, Philadelphia, PA 19103, Attn: Richard M. Beck, Esquire, Fax: 215-568-6603,

9

Email: rbeck@klehr.com. The Bid may be sent by fax or email in addition to other methods of delivery, provided that the Bid is received by the Trustee before the Bid Deadline.

## Determination of Qualified Bid Status

a.     To be eligible to participate in the bidding process for the Acquired Assets, each Qualified Bidder must deliver a written Bid to the Trustee and the other required parties by the Bid Deadline that complies with all of the following conditions:

i.     <u>Modified Agreement</u>. The Bid shall include an execution copy of the proposed asset purchase agreement signed by an authorized representative of the Qualified Bidder (the "Modified Agreement") and a black-lined copy of the Modified Agreement compared against the Agreement to show all changes requested by the Qualified Bidder, including, without limitation, those related to the purchase price and other modifications; provided, however, that the terms of the Modified Agreement must be in all respects substantially the same or better than the terms of the Agreement.

ii.     <u>Acquired Assets</u>. Each Bid shall be for some or all of the Acquired Assets and may include a bid for the Excluded Assets, provided, however, that the purchase price shall be allocated by the Qualified Bidder among Acquired and Excluded Assets.

iii.     <u>Assumption of Agreements</u>.     The Modified Agreement must identify which of the Assumed and Assigned Agreements such Qualified Bidder seeks to assume.

iv.     <u>Contingencies</u>.     A Bid may not be conditioned on obtaining financing, inspection, internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties or the satisfaction in all material respects at the closing of specified conditions, none of which shall be more burdensome than those set forth in the Agreement.

v.     <u>Authorization to Bid</u>.     A Bid shall include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

vi.     <u>Good Faith Deposit</u>. Each Bid must be accompanied by a deposit in the form of a wire transfer, certified check or cashier's check and in an amount equal to ten percent (10%) of the total consideration contemplated by the Bid to be deposited in an interest-bearing escrow account by the Trustee's counsel, Klehr Harrison Harvey Branzburg LLP (the "Good Faith Deposit").

vii.     <u>Minimum Bid Requirements</u>. Each Qualified Bidder's Bid must have a purchase price that includes consideration that is at least $975,000 allocated to the

10

Acquired Assets (the "Minimum Initial Bid") and may include additional consideration allocated to the Excluded Assets.

viii.   <u>No Fees or Representations</u>.  A Bid must not include or request that the Qualified Bidder be entitled to any transaction or break-up fee, expense reimbursement, termination or similar type of fee or payment, and it shall include the acknowledgement and representation of the Qualified Bidder that (a) the purchase of the Acquired Assets is on an **"as-is"** and **"with all faults"** basis and without representations, warranties or guarantees, express, implied or statutory, written or oral, of any kind, nature or description, by the Trustee, his agents, his representatives or the Debtor's estate, except as otherwise specifically provided in a definitive purchase agreement with the Trustee; and (b) the Qualified Bidder has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guarantees, express, implied, statutory or otherwise, regarding the Acquired Assets, the financial performance of the Acquired Assets or the physical condition of the Acquired Assets, or the completeness of any information provided in connection therewith or in connection with the Competitive Sale Process, except as expressly stated in the Bidding Procedures or the Agreement.

ix.   <u>Other Evidence</u>.  Each Bid must contain evidence satisfactory to the Trustee that the bidder is reasonably likely (based on availability of financing, experience and other considerations) to, among other things, satisfy the standard to provide adequate assurance of future performance of any Contracts to be assumed and assigned under Section 365 of the Bankruptcy Code, and be able to timely consummate a purchase of the Acquired Assets if selected as the Successful Bidder.

b.   A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements, as determined in the Trustee's reasonable discretion (taking into account the terms and conditions of any assumed debt obligations), and that satisfies the Bid Deadline requirement, shall constitute a qualified bid ("Qualified Bid").  In the event that a Bid is determined not to be a Qualified Bid in accordance with the conditions set forth above, the Qualified Bidder shall be notified promptly and shall be refunded its Good Faith Deposit (if any) within three (3) business days after such determination.

c.   Notwithstanding anything in these Bidding Procedures to the contrary, the Prospective Purchaser shall be deemed a Qualified Bidder and the Agreement shall be deemed to constitute a Qualified Bid.

**B.**    **Bid Protections**

25.    The Term Sheet provides bid protections for the Prospective Purchaser in the form of a break-up fee of 5% of the purchase price, plus reimbursement of reasonable costs and expenses incurred by Purchaser in connection with the Sale process in an amount not to exceed $10,000 (the "Bid Protections"). The Trustee seeks approval of the Bid Protections in recognition of the Prospective Purchaser's substantial expenditure of time, energy, and resources in pursuing the purchase of the Acquired Assets and negotiating the Agreement, and the benefits to the Debtor's estate of securing a "Prospective" or guaranteed minimum bid for the Acquired Assets. The Bid Protections are required by the Agreement.

26.    If approved, the Bid Protections will be paid to the Prospective Purchaser pursuant to the terms of the Agreement only if a higher and better offer for the Acquired Assets is received. The Bid Protections will not be payable with respect to any offer on the Excluded Assets that is received during the sale process. Thus, the approval and potential payment of the Bid Protections will not adversely affect the Debtor's estate. In the event the Prospective Purchaser is entitled to payment of the Bid Protections, such payment will be made pursuant to the terms of the Agreement after Closing of the Sale. In no event shall the Bid Protections be owed to the Prospective Purchaser if the Prospective Purchaser fails to close under the Agreement due to its own default.

**C.**    **Notice of Competitive Sale Process and Sale Hearing**

27.    The Trustee seeks to have the Competitive Sale Process scheduled for a date no later than June 29, 2016. The nature of the Debtor's business and assets are vulnerable to erosion if they remain in Chapter 11 any longer than is absolutely necessary to implement the Sale process.

12

28.     Not later than two (2) business days after the entry of the Bidding Procedures
Order, the Trustee will serve copies of the notice of the sale, substantially in the form attached
hereto as Exhibit "E" (the "Sale Notice"), the Bidding Procedures, and the Bidding Procedures
Order by U.S. mail, postage prepaid, to the following parties: (i) the Office of the United
States Trustee; (ii) all parties or, if available, their counsel, who have filed or asserted any lien or
security interest in any of the Acquired Assets; (iii) counsel to the Petitioning Creditors; (iv) all
taxing authorities having jurisdiction over any of the Acquired Assets subject to the sale,
including the Internal Revenue Service; (v) any parties that have requested special notice
pursuant to Bankruptcy Rule 2002; (vi) all Contract Parties (defined below); (vii) counsel to the
Prospective Purchaser; and (viii) all potential bidders previously identified or otherwise known
to the Debtor or the Trustee.

29.     The Trustee further requests that objections, if any, to the proposed Sale,
including, without limitation, objections to the Sale of the Acquired Assets free and clear of
liens, claims, encumbrances and interests pursuant to Section 363(f) of the Bankruptcy Code,
shall (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed
with the Clerk of the United States Bankruptcy Court for the Eastern District of Pennsylvania,
900 Market Street., Suite 400, Philadelphia, PA 19107 by 4:00 p.m. (prevailing Eastern Time) on
the deadline set by the Court for the filing of objections (the "Sale Objection Deadline"); and
(d) be served so as to be received by the Sale Objection Deadline by the following parties (the
"Objection Service Parties"):

     a.     Counsel to the Trustee, Klehr Harrison Harvey Branzburg LLP, 1835
Market Street, Suite 1400, Philadelphia, PA 19103, Attn: Richard M.
Beck, Esquire;

b.     Counsel to the Petitioning Creditors, Kurtzman Steady, LLC, 401 S. 2nd Street, Suite 301, Philadelphia, PA 19147, Attn: Jeffrey Kurtzman, Esquire;

c.     The Office of the United States Trustee, 833 Chestnut Street, Suite 500, Philadelphia, PA 19107; and

d.     Prospective Purchaser, William G. Kiesling, Vice President—Legal and Licensing and General Counsel, CSS Industries, Inc., Interchange Corporate Center, 450 Plymouth Road, Suite 300, Plymouth Meeting, PA 19462.

**D.**     **Proposed Procedures to Determine Cure Amounts and Deadlines for Objection to Assumption and Assignment of the Assumed and Assigned Agreements**

30.     To facilitate and effect the Sale, the Trustee will be required to assume and/or assign the Assumed and Assigned Agreements to the Prospective Purchaser or to the Successful Bidder (as applicable). The Trustee expects that the Assumed and Assigned Agreements will be a subset – as designated, as applicable, by the Prospective Purchaser or other Successful Bidder – of the executory contracts and unexpired leases to which the Debtor is a party.

31.     The Trustee seeks to establish (a) procedures for determining the amounts necessary to cure any defaults under the Assumed and Assigned Agreements through the closing date of the Sale as required under Section 365 of the Bankruptcy Code (the "Cure Amounts"); and (b) the deadline for objections to the potential assumption and assignment of the Assumed and Assigned Agreements in connection with the Sale (collectively, the "Cure Procedures").

32.     The Trustee proposes that, not later than two (2) business days after the entry of the Bidding Procedures Order, the Trustee shall file with the Court and serve by first class United States Mail, postage pre-paid, to all non-Debtor parties to the Assumed and Assigned Agreements (each a "Contract Party" and, together, the "Contract Parties") a notice, substantially in the form annexed hereto as Exhibit "F" (the "Assumption and Assignment Notice"), including

14

the proposed Cure Amounts and evidence of adequate assurance of future performance by the Prospective Purchaser, on all Contract Parties to the Assumed and Assigned Agreements. In the event other Qualified Bids are received by the Trustee, the Trustee shall, within one (1) day after the Bid Deadline, serve on all Contract Parties any further Assumption and Assignment Notice that may be required by the terms of such Qualified Bid and evidence of adequate assurance of future performance by any Qualified Bidder.

33.    The Trustee further proposes that each Contract Party would then have until 4:00 p.m. on June 29, 2016 (the "Assignment Objection Deadline") to object to the assumption and assignment of any Assumed and Assigned Agreement including, without limitation, objecting to the Cure Amounts and/or adequate assurance of future performance.

34.    No other or further notice to the Contract Parties should be required with respect to the Assumed and Assigned Agreements. The Trustee also proposes that all objections (a) be in writing; (b) as applicable, state with specificity (i) the cure amount that the Contract Party believes is required, and/or (ii) the adequate assurance of future performance that the Contract Party believes is required; (c) comply with the Bankruptcy Rules and the Local Rules; (d) be filed with the Clerk of the United States Bankruptcy Court for the Eastern District of Pennsylvania, Eastern District of Pennsylvania, 900 Market Street, Suite 400, Philadelphia, PA 19107; and (e) be served so as to be received by the Assignment Objection Deadline by the Objection Service Parties; provided, however, that in the event the Competitive Sale Process results in a Successful Bidder other than the Prospective Purchaser, the deadline for objecting to the assignment of the Assumed and Assigned Agreements to such Successful Bidder based upon adequate assurance of future performance will be on the date set by the Court in the Bidding Procedures Order.

15

35.     Unless an objection to the assumption and assignment of an any of the Assumed and Assigned Agreements is filed and served before the Assignment Objection Deadline, the Trustee proposes that all Contract Parties to each of the Assumed and Assigned Agreements (a) be forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts with respect to each Assumed and Assigned Agreement, and the Trustee and Prospective Purchaser or other Successful Bidder, as applicable, shall be entitled to rely solely upon the proposed Cure Amounts set forth in the Assumption and Assignment Notice relating thereto; (b) be deemed to have consented to the assumption and assignment of the Assumed and Assigned Agreement; and (c) be forever barred and estopped from asserting or claiming against the Trustee, the Debtor, or Prospective Purchaser or other Successful Bidder, as applicable, that any additional amounts are due or other defaults exist, that any conditions to assignment must be satisfied under such Assumed and Assigned Agreement, or that there are any objections or other defenses to the assumption and assignment of such Assumed and Assigned Agreement.

36.     To facilitate a prompt resolution of cure disputes and objections relating to the assumption and assignment of the Assumed and Assigned Agreements, the Trustee proposes that any objection to a proposed Cure Amount (a "Disputed Cure Amount") which is timely filed and served by any Contract Party in accordance with the Assumption and Assignment Notice and which is not otherwise resolved by the parties, will be heard at the Sale Hearing.  Pending a ruling on such objection, if not made at the Sale Hearing, the amount necessary to satisfy the Disputed Cure Amount will be reserved and paid upon a final Court order fixing the correct Cure Amount and will be paid as provided in the Agreement, to the extent the Assumed and Assigned Agreement ultimately is assumed and assigned to the Prospective Purchaser or other Successful

16

Bidder.  All other objections to the proposed assumption and assignment of an Assumed and Assigned Agreement will be heard at the Sale Hearing.

37.     For the avoidance of doubt, no Assumed and Assigned Agreement will be assumed and assigned to the Prospective Purchaser or other Successful Bidder, as applicable, until such time as the Sale Order has been entered and the transaction contemplated by the Agreement or other purchase agreement of the other Successful Bidder, as applicable, has closed. The Trustee's rights to decline to assume or to assume and assign any Assumed and Assigned Agreements prior to closing the Sale are hereby reserved, provided that the requirements of Section 365 of the Bankruptcy Code shall be satisfied with respect to all Assumed and Assigned Agreements.  In addition, the Trustee may also redesignate an Assumed and Assigned Contract as a contract that will not be assumed or assigned to the Successful Bidder at any time prior to closing on the Sale and the contract counter-party on any such agreement shall be notified of the redesignation of the Assumed and Assigned Agreement no later than one (1) business day after the date of Closing.

## BASIS FOR RELIEF REQUESTED

### A.     The Sale is Within the Sound Business Judgment of the Trustee and Should be Approved.

38.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in this Circuit and others have required that a decision to sell assets outside the ordinary course of business be based upon sound business judgment and a good faith proposal.  See In re Abbotts

17

Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-50 (3d Cir. 1986); Comm. of Equity Sec.

Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983).

39.     The "sound business judgment" test requires a trustee to establish four elements in

order to justify the sale or lease of property outside the ordinary course of business, namely,

(a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of

business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that

the trustee has obtained a fair and reasonable price, and (d) good faith.  See Titusville Country

Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In

re Sovereign Estate, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).

40.     Once a valid business justification has been articulated, "[t]he business judgment

rule is a presumption that in making the business decision the [trustee] acted on an informed

basis, in good faith and in the honest belief that the action was in the best interests of the

company." In re S.N.A. Nut Co., 186 B.R. 98 (Bankr. N.D.Ill. 1995); see also In re Integrated

Res., Inc., 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612,

615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to…management

decisions"). A trustee's showing of a sound business purpose need not be unduly exhaustive but,

rather, a trustee is "simply required to justify the proposed disposition with sound business

reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).  Whether or

not there are sufficient business reasons to justify a transaction depends upon the facts and

circumstances of each case. See Lionel, 722 F.2d at 1071.

41.     Additionally, Section 105(a) of the Bankruptcy Code provides a bankruptcy court

with broad powers in the administration of a case.  Section 105(a) provides that "[t]he court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The exercise of a bankruptcy court's Section 105(a) power is proper as long as it does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code. See In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to Section 105(a), a court may fashion an order or decree that helps preserve or protect the value of assets. See e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

42.     The Trustee submits that a reasonable and sufficient basis exists to sell the Acquired Assets to the Prospective Purchaser or other Successful Bidder pursuant to the Bidding Procedures. As set forth more fully above, both the Debtor and the Trustee have conducted extensive marketing and sale processes for the Acquired Assets and have engaged in extensive negotiations and due diligence with numerous interested parties in connection with a transaction. The proposed Bidding Procedures represent a continuation of these efforts, and they are designed to assist the Trustee in achieving the greatest return possible for the assets.

43.     The Sale Notice is designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Acquired Assets. The Trustee will continue to solicit the interest of qualified parties in the transaction.

44.    The Bidding Procedures are designed to maximize the value received for the Acquired Assets.   The process proposed by the Trustee allows for a timely and efficient Competitive Sale Process while providing bidders with ample time and information to submit a timely bid and to perform due diligence (to the extent they have not already done so).   The Bidding Procedures are designed to ensure that the Acquired Assets will be sold for the highest or otherwise best possible purchase price.   The Trustee is subjecting the value of the Acquired Assets to market testing and permitting prospective purchasers to bid on the Acquired Assets. Accordingly, the Trustee and all parties in interest can be assured that the consideration received for the Acquired Assets will be the greatest possible recovery for the Acquired Assets.

### B.    The Sale is Proposed in "Good Faith" Under Section 363(m) of the Bankruptcy Code.

45.    The Trustee requests that the Court find that the Successful Bidder is entitled to the benefits and protections provided by Section 363(m) of the Bankruptcy Code in connection with the Sale.

46.    Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

47.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to Section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

20

48.     The Trustee submits, and will present evidence at the Sale Hearing, if necessary, that as set forth above, the Agreement was a heavily negotiated and arm's-length transaction in which the Prospective Purchaser acted in good faith. The consideration received by the Trustee for the Acquired Assets pursuant to the Agreement is substantial, fair and reasonable. The Prospective Purchaser is not an insider of the Trustee and is not affiliated with the Trustee. The Agreement represents a market transaction, and it will be subject to higher and better offers, if any. There is no indication of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Sale or Agreement to be avoided under Section 363(n) of the Bankruptcy Code. Finally, the Agreement was evaluated and approved in consultation with the Trustee's professionals. Accordingly, the Trustee requests that the Court make a finding that the Prospective Purchaser, or other Successful Bidder, has purchased the Acquired Assets in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

## C.      **The Sale Satisfies the Requirements of Section 363(f) of the Bankruptcy Code.**

49.     Under Section 363(f) of the Bankruptcy Code, a trustee may sell all or any part of a debtor's property free and clear of any and all liens, claims or interests in such property if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. See 11 U.S.C. § 363(f); see also Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that Section 363(f) of the Bankruptcy Code is written in the

21

disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).

50.    The following parties have filed or otherwise notified the Trustee that they assert liens and/or security interests in some or all of the Acquired Assets: Accord and RJLS (the "Secured Parties"). The Trustee has included language in the proposed Sale Order that any and all liens, security interests or other encumbrances will attach to the proceeds of the Sale to the same extent as, and in the same order of priority as, they attached to the Acquired Assets. In proposing this language to be included in the Sale Order, the Trustee is not acknowledging the validity or extent of any claim, lien, security interest or encumbrance asserted by any of the Secured Parties and expressly reserves the right to assert any claim, defense, counterclaim, right of set off or recoupment, surcharge or any other action against any Secured Party with respect thereto.

**D.    The Bid Protections are Reasonable and Appropriate.**

51.    Approval of the Bid Protections is governed by standards for determining the appropriateness of bidding incentives in the bankruptcy context established by the Third Circuit in Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527 (3d Cir. 1999). In O'Brien, the Third Circuit concluded that "the determination whether break-up fees or expenses are allowable under § 503(b) must be made in reference to general administrative expense jurisprudence. In other words, the allowability of break-up fees . . . depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." O'Brien, 181 F.3d at 535. Here, the Bid Protections should be approved because they provide a significant benefit to the estate.

PHIL1 5396318v.5

52.    The Third Circuit identified at least two instances in which bidding incentives may benefit the estate.  First, they may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." O'Brien, 181 F.3d at 537.  Second, if the availability of a break-up fee induces a bidder to research the value of the debtor and to convert that value to a dollar figure on which other bidders can rely, the bidder may provide a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth.  Id.

53.    In O'Brien, the Third Circuit referred to nine factors that the bankruptcy court viewed as relevant in deciding whether to award a break-up fee: (1) the presence of self-dealing or manipulation in negotiating the break-up fee; (2) whether the fee harms, rather than encourages, bidding; (3) the reasonableness of the break-up fee relative to the purchase price; (4) whether the "unsuccessful bidder place[d] the estate property in a sales configuration mode to attract other bidders to the Competitive Sale Process"; (5) the ability of the request for a break-up fee "to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders"; (6) the correlation of the fee to a maximization of value of the debtor's estate; (7) the support of the principal secured creditors and creditors committee of the break-up fee; (8) the benefits of the safeguards to the estate; and (9) the "substantial adverse impact [of the break-up fee] on unsecured creditors, where such creditors are in opposition to the break-up fee." O'Brien, 181 F.3d at 536.

54.    The Trustee submits that the Court should approve the Bid Protections because they satisfy the Third Circuit's "administrative expense" standard.  The Bid Protections should be approved because they are a necessary component to obtaining a maximum return for the

benefit of the estate. Because the Prospective Purchaser will not agree to move forward with the Agreement without approval of the Bid Protections, they are an essential component of the Agreement, and the Trustee's ability to continue to shop the Acquired Assets for a higher or better offer without risk of losing the Prospective Purchaser would be lost if the Trustee is not authorized to commit to these protections. Absent authorization to pay the Bid Protections if the Prospective Purchaser is outbid, the Trustee might lose the opportunity to obtain the highest and best available offer for the Acquired Assets and the downside protection that will be afforded by the Agreement.

55.    Payment of the Bid Protections will not diminish the estate—rather, the Agreement and the Prospective Purchaser's offer will form the basis upon which other bids will be submitted and evaluated. Agreeing to the Bid Protections permits the Trustee to insist that competing bids for the Acquired Assets be higher or otherwise better than the purchase price under the Agreement, which is a clear benefit to the estate. Even if the Prospective Purchaser ultimately is not the Successful Bidder, the Trustee and the creditors of the estate will still have benefited from the higher floor established by the higher winning bid, increasing the price for the Acquired Assets.

56.    The terms of the Bid Protections are also reasonable. The amount of the proposed Bid Protections will not exceed $55,000. In light of the benefit to the estate that will be realized by having a definitive, executed purchase agreement, approval of the Bid Protections are appropriate.

57.    The Trustee's request for approval of the Bid Protections under the circumstances described herein (i) represents an actual and necessary cost and expense of preserving the estate, within the meaning of Section 503(b) of the Bankruptcy Code; (ii) provides a substantial benefit

to the estate; and (iii) is reasonable and appropriate in light of the efforts and the significant due diligence costs and expenses that have been and will be expended by the Prospective Purchaser. Accordingly, the Trustee respectfully requests that the Court approve the Bid Protections as requested herein.

### E.    The Proposed Procedures With Respect to the Assumption and Assignment of Executory Contracts and Unexpired Leases Provide Adequate Notice and Should be Approved.

58.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard governing bankruptcy court approval of a trustee's decision to assume or reject an executory contract or unexpired lease is whether the trustee's reasonable business judgment supports assumption or rejection. See e.g., In re Stable Mews Assoc., Inc., 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). If a trustee's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. See Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 318 U.S. 523 (1943); Sharon Steel Corp. v. Nat'l Fuel Gass Dist. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989). The business judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the executory contract will benefit the estate." Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting Stable Mews, 41 B.R. at 596).

59.    Pursuant to Section 365(b)(1) of the Bankruptcy Code, for a trustee to assume an executory contract, he or she must cure, or provide adequate assurance that he or she will

promptly cure, any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

60.     Once an executory contract has been assumed, a trustee may elect to assign such contract. See In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); see also In re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1994) (noting purpose of Section 365(f) is to assist the trustee in realizing the full value of the debtor's assets).

61.     Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract . . . only if the trustee assumes such contract . . . and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989); see also In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute insurance that debtor will thrive and make a profit).

62.     Additionally, as set forth above, Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under Title 11. 11 U.S.C. § 105(a).

63.     The Trustee respectfully submits that the proposed Cure Procedures (encompassed within the Bidding Procedures), including the form of Assumption and Assignment Notice, are appropriate and reasonably tailored to provide all Contract Parties to the Assumed and Assigned Agreements with adequate notice of the proposed assumption and/or assignment of their applicable contracts or leases, as well as proposed Cure Amounts, if

26

applicable. Such non-Debtor parties to the Assumed and Assigned Agreements will then have an adequate opportunity to submit any objections they may have. The Cure Procedures further provide that, in the event an objection is not resolved, including with respect to adequate assurance of future performance, the Court will determine whether the requirements of Section 365 of the Bankruptcy Code with respect to adequate assurance are satisfied. Accordingly, the Trustee submits that the proposed Cure Procedures are appropriate under the circumstances.

**F.**    **Relief from the Fourteen Day Waiting Periods Under Bankruptcy Rule 6004(h) is Appropriate.**

64.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Trustee requests that the Sale Order be effective immediately upon entry by providing that the stay under Bankruptcy Rule 6004(h) is waived.

65.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). The fourteen-day period may be eliminated to allow a sale or other transaction to close immediately, particularly "where there has been no objection to the sale procedure." 10 Collier on Bankruptcy, ¶ 6004.10 at 6004-18 (L. King, 15th rev. ed. 2008).

66.    Time is of the essence with respect to the Sale. In view of the Trustee's need to close the sale before contractual deadlines in the Agreement expire, upon approval of the Sale at the Sale Hearing, the Trustee requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

PHIL1 5396318v.5

### G.    Request for Expedited Hearing and Reduced Notice Period.

67.    Cause exists to reduce the time period for notice of the Motion in that the Trustee cannot continue the business as presently structured and generate sufficient revenue to timely satisfy debt obligations.

68.    Unless the Trustee is able to obtain the prompt issuance of the Bidding Procedures Order so that an auction of the Acquired Assets can be scheduled on June 29, 2016, the Trustee may not be able to continue operations.

69.    For these reasons, the Trustee is proposing a Bid Deadline of June 28, 2016, with an auction to be held on June 29, 2016, and the Sale Hearing to be held shortly thereafter.

70.    The Trustee has advised the Secured Creditors that it will be requesting an expedited hearing to consider the Bidding Procedures in connection with this Motion.

PHIL1 5396318v.5

## CONCLUSION

WHEREFORE, the Trustee respectfully requests: (i) entry of an order scheduling an expedited hearing and reducing and limiting the notice period for the initial scheduling of the hearing on the Motion, (ii) entry of the proposed Bidding Procedures Order, substantially in the form attached hereto as Exhibit "A", approving the Bidding Procedures set forth in Exhibit "B"; (iii) subsequent entry of the proposed Sale Order, substantially in the form attached hereto as Exhibit "C"; and (iv) such other and further relief as the Court deems just and proper.

Respectfully submitted:

Dated:  June 10, 2016

KLEHR | HARRISON | HARVEY|
BRANZBURG LLP

By:      /s/Richard M. Beck
         Richard M. Beck, Esquire
         Corinne Samler Brennan, Esquire
         1835 Market Street, Suite 1400
         Philadelphia, PA 19103
         Telephone: (215) 569-2700

         *Counsel to William G. Schwab,*
         *Chapter 11 Trustee*

29